# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

ANTHONY J. DESANO,

                                      Plaintiff,

                     -vs-                                        DECISION AND ORDER

BLOSSOM SOUTH, LLC,                            07-CV-6481 CJS

                                        Defendants.

---

## APPEARANCES

| | |
|---|---|
| For Plaintiff: | Christina A. Agola, Esq.<br>730 First Federal Plaza<br>28 East Main Street<br>Rochester, NY 14614<br>585-262-3320 |
| For Defendants: | Elizabeth A. Bordello, Esq.<br>Paul F. Keneally, Esq.<br>Underberg & Kessler LLP<br>300 Bausch & Lomb Place<br>Rochester, NY 14604<br>585-258-2805 |

## INTRODUCTION

The complaint in this lawsuit alleges violations of the Family Medical Leave Act ("FMLA") and Americans with Disability Act ("ADA"), as well as a state law cause of action for libel *per se.* The case is before the Court on Defendant's motion to dismiss all federal claims, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a cause of action and to dismiss the state claim, since upon dismissal of federal claims, there would be no basis to exercise supplemental jurisdiction. In response, Plaintiff has conceded that he has not

pled a cause of action under the FMLA, but maintains his cause of action under the ADA, and, accordingly, his state law libel *per se* have been properly pled. For the reasons that follow, the Court grants Defendant's application to dismiss in part, and denies it in part. The FLMA claims are dismissed, but the ADA claim and the state law claim may go forward.

## BACKGROUND

For the purpose of analyzing Defendant's motion, the Court accepts as true the facts alleged in the complaint, including the following:

8. Plaintiff was employed by the defendant as "Food Service Director" from October 2006 until May 7, 2007.

9. Upon hire, Plaintiff advised defendant that he was recovering from cancer.

10. On or about April 11, 2007, Plaintiff advised his manager Murphy that he was not feeling well, was unable to perform his job and that he had a doctor's appointment at 10:15 a.m. that morning.

11. Thereafter the Plaintiff met with his doctor who diagnosed Plaintiff with sinusitis and prescribed antibiotics, further taking Plaintiff out of work for more than three consecutive days for continuing treatment under the care of a physician.

12. That Plaintiff only advised Murphy of his medical condition to qualify for leave under the FMLA and/or Short-Term Disability ("STD") leave to preserve his job and to demonstrate his "inability to work," and hence, Plaintiff did not inform Murphy, or any other employee of the defendant, of his condition voluntarily.

13. The information relayed by Plaintiff and his doctor later that morning were necessary to certify that Plaintiff indeed suffered from a "serious health condition" under the FMLA, which would clearly be a response to an employer inquiry, namely whether Plaintiff was "unable to perform the functions of his position" pursuant to 29 U.S.C. § 2612(a)(l)(D).

14. Accordingly, §12112(d)'s plain language requires Murphy to treat Plaintiff's response to Murphy's inquiry, as an agent of the defendant, as confidential.

15. Indeed, at no time prior to April 11, 2007 had Plaintiff ever discussed his sudden serious medical condition with Murphy, nor did Plaintiff discuss his condition with any other employee.

16. That upon receiving information regarding Plaintiff's medical condition, Murphy had an obligation to maintain the confidentiality of the facts and circumstances regarding Plaintiff's medical condition, as per § 12112(d)'s plain language.

17. However, when Plaintiff returned from her [sic] doctor's visit that morning of April 11, 2007, Murphy compelled the Plaintiff to meet with himself and several other co-workers ("the team") in a closed room, a fact supported by Murphy's 4/16/07 Memorandum set forth below.

18. Upon Murphy's direction, Plaintiff provided the team with his doctor's note indicating that he would need to be off of work for more than three consecutive days and not able to return to work until April 16, 2007.

19. When all of the members of the team read the note, they claimed they were not able to read the doctor's handwriting and asked Plaintiff to have his doctor "clarify" the note, further demanding Plaintiff to explain what he was suffering from.

20. Plaintiff called his doctor and asked for clarification as to whether or not he was contagious; the doctor informed Plaintiff that he was not contagious.

21. Plaintiff reported the clarification to his supervisor.

38. Defendant improperly disclosed the information given by Plaintiff involuntarily to preserve his employment and to qualify for STD and FMLA leave by responding to Murphy's inquiry as to his condition. That "inquiry" into Plaintiff's medical condition falls within the meaning of ADA Sections 12112(d). 42 U.S.C. § 12112(d). Further, Plaintiff revealed his medical diagnosis to defendant only after the defendant, through the direct supervisor, informed him "[p]ermission was granted for you to leave the facility on the condition that we reviewed your doctor's note;" accordingly it

was necessary in order to preserve his job that Plaintiff reveal his confidential medical record, thus conditioning Plaintiff's receipt of STD and FMLA leave on his submission of supporting medical documentation, as the FMLA authorized it to do. Thus it was the defendant acting pursuant to their [sic] statutory authorization, not Plaintiff, that initiated the inquiry into him [sic] medical condition for the purpose of determining whether Plaintiff was "unable to perform the functions of his position." 29 U.S.C. § 2612(a)(l)(D). Section 12112(d)'s plain language requires the defendant to treat Plaintiff's response to that inquiry as confidential.

39.     Defendant did not heed the plain language of Section 12112(d). On April 11, 2007 Murphy compelled Plaintiff to share confidential medical information with not only himself but 2 other co-workers in Plaintiff's department of his medical condition pursuant to defendant's inquiry.

40.     That everyone in Plaintiff's department was aware of his confidential medical condition, against his desire and will.

41.     That Plaintiff suffered a cognizable injury, including severe embarrassment and ridicule due to the disclosure of his confidential medical information in violation of the ADA and the FMLA, particularly after Murphy referred to Plaintiff's request for leave as "perpetration of fraud" in his April 16, 1007 [sic] Memorandum

(Compl. ¶¶ 8–21; 38-41)

## STANDARD OF LAW

The U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955 (May 21, 2007), clarified the standard to be applied to a 12(b)(6) motion:

Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted).  *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 2007 WL 1717803 (2d Cir. Jun. 14, 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)  When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000).  On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)).

## ANALYSIS

Plaintiff has conceded that the First, Second and Fourth causes of action in the complaint, which relate to the FMLA must be dismissed for failure to state a cause of action, since he failure to establish his eligibility for the protections of the FMLA. (Agola Decl. ¶ 7.) However, he maintains his third cause of action under the ADA has been properly pled and should not be dismissed In that regard, the relevant section of law, 42 U.S.C. § 12112(d), states as follows:

(d) Medical examinations and inquiries.

(1) In general. The prohibition against discrimination as referred to in subsection (a)[1] shall include medical examinations and inquiries.

(2) Preemployment.

(A) Prohibited examination or inquiry. Except as provided in paragraph (3), a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.

(B) Acceptable inquiry. A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions.

(3) Employment entrance examination. A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination, if–

(A) all entering employees are subjected to such an examination regardless of disability;

(B) information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, except that–

(i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;

(ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and

---

[1] "(a) General rule. No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (1991).

>     (iii) government officials investigating compliance with this Act shall be provided relevant information on request; and
>
>     (C) the results of such examination are used only in accordance with this title.
>
>   (4) Examination and inquiry.
>
>     (A) Prohibited examinations and inquiries. A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.
>
>     (B) Acceptable examinations and inquiries. A covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions.
>
>     (C) Requirement. Information obtained under subparagraph (B) regarding the medical condition or history of any employee are subject to the requirements of subparagraphs (B) and (C) of paragraph (3).

42 U.S.C. § 12112(d) (1991). If Plaintiff's complaint is construed to claim a violation of § 12112(d)(1), then it must be dismissed, since it only protects qualified individuals under the ADA, and Plaintiff has not alleged any facts to indicate he is a qualified individual. *Fredenburg v. Contra Costa County Dep't of Health Servs.*, 172 F.3d 1176, 1182 (9th Cir. 1999). If, instead, Plaintiff's claim is construed to be under either subsection (d)(2), (d)(3), or (d)(4), then the general requirement, that Plaintiff be a qualified individual, does not apply. *Id*. However, subsections (d)(2) and (d)(3) refer to pre-employment physicals, and

the facts plead in the complaint show that Plaintiff was already employed by Defendant. Consequently, only subsection (d)(4) could apply to the situation.

Subsection (d)(4) of § 12112 requires that employers not make inquiries of employees pertaining to their disabilities unless the inquiries are related to the job or are consistent with a business necessity. In addition, subsection (d)(4) requires that the information revealed be kept confidential. Assuming that Defendant's inquiry here caused Plaintiff to reveal that he had been diagnosed with cancer and was being treated for a sinus infection, that information was required to be kept confidential. Plaintiff has alleged, "[t]hat everyone in Plaintiff's department was aware of his confidential medical condition, against his desire and will." (Compl. ¶ 40.) Though Defendant points out that the memorandum quoted in the complaint is addressed to management-level employees, and that under the ADA, "supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations," accepting, as the Court must, the allegation in paragraph 40 of the Complaint, quoted above, as true. Therefore, drawing all reasonable inferences in favor of the nonmoving party, the Court determines that Plaintiff has plausibly plead a claim under 42 U.S.C. § 12112(d)(4).

## CONCLUSION

Defendants' motion (Docket No. 8) to dismiss the complaint is granted in part. The First, Second and Fourth causes of action are dismissed. The Third and Fifth Causes of Action may go forward.

IT IS SO ORDERED.

Dated: April 15, 2008
 Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J.  SIRAGUSA
United States District Judge