UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTHONY J. DESANO,

             Plaintiff,

                       DECISION AND ORDER

       -vs-

                       07-CV-6481 CJS

BLOSSOM SOUTH, LLC,

             Defendants.

**APPEARANCES**

For Plaintiff:           Jason Little, Esq.
                 Christina A. Agola, Esq.
                 730 First Federal Plaza
                 28 East Main Street
                 Rochester, NY 14614
                 (585) 262-3320

For Defendant:         David Fitch, Esq.
                 Elizabeth A. Cordello, Esq.
                 Paul F. Keneally, Esq.
                 Underberg & Kessler LLP
                 300 Bausch & Lomb Place
                 Rochester, NY 14604
                 (585) 258-2805

**INTRODUCTION**

  **Siragusa, J.** This case, alleging a violation of the Americans with Disabilities Act ("ADA") and a state law cause of action for libel *per* se, is before the Court on Defendant's motion for summary judgment on the ADA claim. For the reasons that follow, the Court grants Defendant summary judgment, declines to exercise jurisdiction on the

state law cause of action, and closes this case.

## BACKGROUND

In a prior Decision and Order (Docket No. 18), the Court dismissed Plaintiff's Family and Medical Leave Act claims, but allowed the ADA and libel claims to go forward. Plaintiff was the food service director for Defendant.[1]

Defendants have now moved for summary judgment against the ADA confidentiality claim. In that cause of action, Plaintiff contends he was required to produce a doctor's note at a meeting on April 11, 2007, with his immediate supervisor, Frank Murphy ("Murphy). Also present at the meeting were Tracy Riedl ("Riedl"), the head of human resources for Defendant, and Linda Drossler ("Drossler"), Defendant's head nurse. Concerned that Plaintiff might be contagious, Murphy directed him to provide further clarification of the note, which Murphy shared with Riedl and Drossler. Plaintiff did so, after a private call to his doctor. He now contends that Defendant violated the ADA's confidentiality provisions by sharing the note with Drossler and allowing the information to leak to Plaintiff's subordinates.

## STANDARDS OF LAW
*Summary Judgment*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interroga-tories, and admissions on file, together with the affidavits, if any, show that there is no

---

1 Though not mentioned in the complaint, Blossom South LLC operates a nursing and rehabilitation center in Rochester, New York. *See* New York State Department of Health, Nursing Home Profiles, *at* http://www.nyhealth.gov/facilities/nursing/facility_characteristics/pfi0447.htm (last checked Dec. 3, 2009).

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in

favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S. Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

### *ADA Confidentiality Provisions*

Plaintiff has plead a federal cause of action under the ADA's confidentiality provisions in 42 U.S.C. § 12112(d), which are as follows:

(d) Medical examinations and inquiries.

(1) In general. The prohibition against discrimination as referred to in subsection (a)[2] shall include medical examinations and inquiries.

(2) Preemployment.

---

[2] "(a) General rule. No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (1991).

(A) Prohibited examination or inquiry. Except as provided in paragraph (3), a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.

(B) Acceptable inquiry. A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions.

(3) Employment entrance examination. A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination, if–

(A) all entering employees are subjected to such an examination regardless of disability;

(B) information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, except that–

(i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;

(ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and

(iii) government officials investigating compliance with this Act shall be provided relevant information on request; and

(C) the results of such examination are used only in accordance with this title.

(4) Examination and inquiry.

(A) Prohibited examinations and inquiries. A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

> (B) Acceptable examinations and inquiries. A covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions.
>
> (C) Requirement. Information obtained under subparagraph (B) regarding the medical condition or history of any employee are subject to the requirements of sub-paragraphs (B) and (C) of paragraph (3).

42 U.S.C. § 12112(d) (1991).

## ANALYSIS

Plaintiff contends that he did not voluntarily provide his doctor's note to Defendant, that the note was produced pursuant to Defendant's inquiry, that it was not produced for a legitimate business reason, and the Defendant failed to keep the note confidential as required by the statute. However, the Defendant disagrees and argues that the note was produced as the result of an inquiry by Defendant, that it was shared only with management personnel, and that any disclosure outside the allowance of the statute was not by Defendant.

***Voluntariness of the disclosure***

Plaintiff maintains that his disclosure of the doctor's note was not voluntary, while Defendant contends it was. The Court agrees with Plaintiff's position. In that regard, Murphy sent a memorandum to Plaintiff dated April 16, 2007, captioned "Perpetration of Fraud on 4/11/07," a copy of which was sent to Human Resources. The memorandum reads:

> This matter is in reference to you attending my office on 4/11/07 stating that you are contaminated and will need to see your doctor to be out of the facility sick until your health condition cleared up.
>
> Permission was given to you to see your medical doctor, and upon your

> return in the presence of the HR Director and the Director of Nursing, you stated that you are contaminated, your doctor gave you 2 days off for the antibiotics medication to work and you would be out of work for the next 2 days.
>
> **Permission was granted for you to leave the facility on the condition that we reviewed your doctor's note. When the note was read, the doctor stated that you have either tonsillitis or laryngitis. We were unable to read the doctor's writing, so we asked you to have the doctor clarify why the time off. Through telephone consultation with the doctor, you reported to us that your illness is because of sinusitis. At this time the team confronted you and told you that you are not contaminated, and we stated that you could leave right now for your sick days.**
>
> After this, you stated that your doctor did not state that you are contaminated-instead, you stated that being contaminated is your diagnosis of your health status. At this time we reminded you that you fully understand that this week-end will be a difficult one in your department and it is our belief that you are using this as a way not to support your workers over the week-end.
>
> I want to bring to your attention that this is a serious matter and it is difficult to have staff in management position [sic] that the team cannot trust. If this behavior continues, we will proceed with further disciplinary action.

(*Id.*) Since Murphy wrote that he granted permission to Plaintiff to leave, "on the condition that we reviewed your doctor's note," the Court, in viewing the evidence, as it must, in the light most favorable to the non-moving party, determines that for the purposes of this motion, the disclosure of the doctor's note and subsequent conversation Plaintiff had with his doctor was not voluntary and, instead, constituted an inquiry under the ADA. *See Fleming v. State University of New York*, 502 F. Supp. 2d 324, 337–38 (E.D.N.Y. 2007) (supervisor's requirement that the plaintiff bring a doctor's letter in order to return to work was an inquiry under the ADA).

### *Defendant's inquiry was for a legitimate business reason*

Plaintiff contends that Defendant's inquiry was not legitimately for a business purpose under the ADA. As the district court observed in *Lent v. Goldman Sachs & Co.*,

No. 97 Civ. 9413 (SAS), 1998 U.S. Dist. LEXIS 20371, *26 (S.D.N.Y. Dec. 29, 1998): "The ADA requirements may also be met when an employer can show that an employee will pose a direct threat to health and safety due to a medical condition…"; *see also* 29 CFR 1630.14 (c) (56 FR 35734, July 26, 1991) ("Examination of employees. A covered entity may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity."). The undisputed evidence presented on this motion makes clear that Defendant was concerned about whether Plaintiff was contagious, a legitimate business concern, since Defendant was in the business of +providing food service in a nursing home. Further, Defendant's inquiry pertained to Plaintiff's job attendance, a necessary inquiry for any business. As the Seventh Circuit remarked in *Waggoner v. Olin Corp*., 169 F.3d 481 (7th Cir. 1999),

> [w]e think it also fair to conclude that in most instances the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability. The fact is that in most cases, attendance at the job site is a basic requirement of most jobs.

*Waggoner*, 169 F.3d at 484. Defendant's inquiry into the basis for Plaintiff's request to be out on sick leave because he thought he was contagious, was, accordingly, for a legitimate business reason.

***Sharing the doctor's note with other management staff***

If an employer acquires information about an employee's disability, that information must be "maintained on separate forms and in separate medical files and…treated as a confidential medical record…." 42 U.S.C. § 12112(d)(3)(B). The statute permits the information to be provided to supervisors and managers "regarding necessary restrictions on the work or duties of the employee and necessary accommodations…." 42 U.S.C. § 12112(d)(3)(B)(I); *see also Kingston v. Ford Meter Box Co.*, No. 3:07-CV-270 RM, 2009

U.S. Dist. LEXIS 31710 (N.D. Ind. Apr. 10, 2009) ("Employers may ask employees about their medical information for certain job related purposes, but once that information is obtained, they must keep it confidential, except that supervisors and managers may be informed about necessary restrictions or accommodations on work duties, first aid and safety personnel may be informed when appropriate, and government officials investigating compliance with this act can obtain the information.").

With regard to the human resources director, Plaintiff concedes that it was within the scope of her duties to have access to Plaintiff's doctor's note. (Pl.'s Response to Def.'s Statement of Facts ¶ 19.) However, Plaintiff contends that the job duties of the head of nursing, Drossler, did not include review of medical information such as Plaintiff's doctor's note. (*Id*. ¶ 20.) It is also undisputed that Droessler, as director of nursing, assumed Murphy's position when he was out of the office. (*Id*. ¶ 22.) Droessler testified at her deposition that she also had access to employee health records if she requested them, but that Plaintiff, although he considered himself a peer of hers, did not. (Drossler Dep. 55:23–56:5, 56:21–57:12.) Consequently, Plaintiff has failed to raise an issue of material fact with regard to Drossler having access to his doctor's note. Rather, Defendant has shown that Drossler properly was given the information in her capacity as either Murphy's successor, or because she had access to employee health records. Moreover, Plaintiff has failed to establish that either Murphy, Drossler or Riedl disclosed the information to anyone else who, unlike them, was not authorized to see the information.

Plaintiff also argues that since five or six of his subordinates asked him questions about his health after the April 12, 2007, meeting with Murphy, Drossler and Riedl

(Desano Dep. 91-92), that "[t]his two [sic] would sustain Plaintiff's burden for the purposes of the ADA confidentiality provisions." (Pl.'s Mem. of Law 9.) The Court disagrees. The evidentiary proof shows that only the three management-level employees were present at the meeting and that the door to the meeting room was closed. However, Plaintiff conceded during his deposition his belief that when he was discussing his medical past in that closed room, he raised his voice. (Desano Dep. 92:7–8.) Since no evidence was produced to show that any of the three management employees disclosed the information to anyone else, the only logical conclusion is that Plaintiff, himself, disclosed the information, however inadvertently, by raising his voice during the meeting when he was discussing his prior medical history. *See Powell v. Schriver*, 175 F.3d 107, 111 n.1 (confidentiality of medical information may be waived by taking actions contrary to confidentiality).

## CONCLUSION

Defendants' motion for summary judgment (Docket No. 31) is granted. Since the only federal cause of action is dismissed, the Court, pursuant to 28 U.S.C. § 1367(c)(3) (1990), declines to exercise jurisdiction over the remaining state law claim for libel *per se*. The Clerk is directed to enter judgment on the ADA cause of action and close this case.

IT IS SO ORDERED.

Dated: December 17, 2009
       Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge